Good morning, Your Honors. Catherine Young from the Federal Public Defender's Office for the Petitioner, Antonio Castellano. Mr. Castellano was before this Court because he's appealing the district court's denial of his pro se federal habeas petition, in which he challenged a 20-year sentence for domestic violence convictions. The issue before this Court is whether his conviction was improper because the trial court violated the confrontation clause by restricting his cross-examination of the victim at the preliminary hearing. The trial court then allowed It gets confusing because the trial court is the in my mind is the trial who presided over the trials. Somebody else, I assume, presided over the You're right, Your Honor. the preliminary hearing. So if you could keep it straight, it would be helpful. I apologize, Your Honor. Okay. Just to make sure. There were two different judges. One judge presided over the preliminary hearing and a different judge presided over the trial? That's correct, Your Honor. The magistrate who presided over the preliminary hearing. You're right. So let's call him the magistrate, and we'll understand that the trial judge is the one who presided over the trial. Thank you, Your Honor. Now, let me say something. You were here the other day, nervousing about time. We've allocated 10 minutes for this case. It may take a little longer. So say what you need to say. Thank you, Your Honor. The magistrate restricted cross-examination of the victim into areas of self-defense that even the State court, the State appellate court, admitted was relevant, issues of self-defense. And then that testimony was admitted at trial and became the vehicle for introduction of prior inconsistent statements made by the victim to law enforcement. Now, I want to go into first, I'll talk about the issues. When the issue came up, I don't want to disrupt your argument. When the issue came up at trial and the justification, the trial judge could have let it in as well, I assume. Well, when the issue came up at trial, his defense was, at trial, the defense was that it wasn't really self-defense. It wasn't a self-defense. He wanted it to deal with the state of mind of the victim. And the issue on self-defense is really the state of mind of the shooter. Well, I think the problem here, Your Honor, is that he wanted to argue self-defense. He asked for a self-defense instruction. Yeah, but it was never, it wasn't argued to the jury in the defense submission. And it wasn't, the defendant, I don't recall now, between these cases whether he didn't testify or if he did,  He did not testify. So it wasn't really a serious, at the trial, self-defense wasn't the serious issue. Well, I think the reason it was not a serious issue was because he was precluded from obtaining the evidence he needed to present in support of his self-defense claim. And those were the two questions at the preliminary hearing? It's, they were presented by the State Court of Appeal as two questions, but trial counsel repeatedly stated these are two areas of inquiry. He asked about one incident in 2003 when, in fact, Sanchez had knifed Castellano and then Sanchez had been arrested. And that testimony came out at the trial. It wasn't the, when the letter that she wrote to the victim, wrote to the prosecutor, talked about having knifed him, didn't it? Well, I think it was a very brief allusion to that. But my concern. I believe she said that she and Castellano fought a lot. On one occasion she cut Tony and they arrested her, but she never had to go to court for it because I told the cops Tony hurt me. And I have two concerns with that. One is that, one of the issues is that because. That's one question. The note from the victim that was read to the jury was, I thought, fairly devastating. I don't know how much more you could have impeached her credibility. Now, I understand what you're saying, Your Honor. It didn't flesh out the incident and that it happened in 2003. And one of my concerns. Well, 2003 was two years before the actual incident. The fact that it didn't flesh it out cuts both ways. Here she's making an admission that on one occasion she cut Tony and they arrested her, but she had to go to court for it because I told the cops Tony hurt me too. And nothing came of it. I don't know what more would have come out. What troubles me is your argument. I think you're implicitly conceding it and you're saying, well, the lawyer said that I have a lot of other questions along this line. But he never said what questions they were. I was present at a trial before a very, very good judge in our court who finally cut the defense lawyer off. And the defense lawyer said, Judge, I have a thousand more questions to ask. The judge excused the jury and he said, go ahead and ask them. There was silence. The reason that I think that the 2003 incident, and he talked about other prior incidents, the reason those are key is because one of the arguments is the battered women's testimony. The battered women's expert told the jury that 75 percent of victims recant.  They say that they were at fault. So anything after 2005, when it was first reported to the police, anything after that, or according to the battered women's testimony, was incriminating to Sanchez. If asked to Castellano, I'm sorry. If after 2005, when it was reported to the police and she recanted, if anything ‑‑ if she said he abused me after that, that was evidence of abuse. If after that she said, no, I was at fault, I was the aggressor, he was defending himself, that was also evidence of abuse because that's what abused victims do. So the trial counsel desperately needed evidence that predated 2005, and that's what he had in the 2003 episode. And we don't know from that reference and that allusion in Sanchez's letter when that incident occurred. He needed something that predated 2005 because the battered women's expert told the jury, anything that happened after that, it's incriminating to Castellano. And what ‑‑ I'm still losing. So it happened two years before this particular incident, and what does it prove? It proves two things. As defense counsel presented it to the court, it proved two things. It proved, first of all, that Castellano had a reason to fear Sanchez, that he had a reason to be proactive in his defense. It also proved that she learned she had to be the one to go to the police first because if she let him go to the police first, if she let him report it, she would be arrested, she would go to jail. So she knew she had to be proactive in going to the police. He had to ‑‑ he learned he had to be proactive in defending himself against her. And that set the dynamics for the whole couple's relationship. I think it might also have put quite a different light on the episode as to which there was testimony when they were, I don't know quite how to describe it, fighting over the knife. It's unclear to me from the testimony, both her direct and her cross, as to who pulled the knife on whom. She says she can't remember. There's something from which one could infer, but it's not very clear, that she might have pulled the knife on him. But she's the one who ends up with the cuts. And I think from the testimony that the jury heard, the jury could well have concluded that he pulled the knife on her. Whereas if they had known that she'd pulled a knife on him in 2003, that episode would have looked very different. No, absolutely, Your Honor. I mean, it would have set the stage for a lot of things. And this was not a clear-cut case at all. I mean, the jury asked for reading of testimony, which under California law is evidence that the jury was concerned. There's split verdicts on all the issues. There are five episodes. And in each episode where there's two different counts, there's one that goes for the defense and there's one that goes for the prosecution. The jury was clearly troubled by what happened here and didn't know what to make out of it. Maybe they did. I mean, you make arguments that cut both ways. The fact that they acquitted on some, convicted on others, it means that they were weighing the evidence carefully to me. No, I think you're right, Your Honor. And they, in fact, didn't believe the victim on every particular issue. So which ones did they convict on and which ones did they acquit on? There was a 2000, I've got my notes. In February 27, 2006, he was convicted of domestic violence but found not guilty of assault with a deadly weapon, the lamp. June 15, 2006, he was found guilty of criminal threats, but the allegation that he was armed with a knife was found not true and he was found not guilty of domestic violence. July 15, 2006, he was found guilty of domestic violence, not guilty of unlawful taking of a vehicle. July 30, 2006, found guilty of criminal threats and not guilty of assault with a deadly weapon. But I understand Your Honor's point that, in fact, it does indicate the jury's making some fine distinctions. Individualized determinations. But it also means that there is, that it's not a slam-dunk case. They do have concerns. And had there been additional evidence, not only of her motives, which at the preliminary hearing was precluded from examining her about, but also these prior incidents where she had been the aggressor, all that would have made a pivotal difference. Well, there was only one incident where she was arguably, arguably an aggressor. The other was some dispute as to whether he came to a birthday party or, you know, was neglecting his familial obligations. It had nothing really to do with, as I understand it, any acts of violence. But isn't what makes this a closed case the treasure trove of evidence that you had to impeach the credibility of Ms. Sanchez, including her letters and, indeed, I think in your brief you describe her statements at the preliminary hearing as exculpatory, or largely exculpatory. In two places you say that. And in one place I'll grant you you say that in light of the impeaching evidence it was exculpatory. She practically, she was at that preliminary hearing not a hostile witness. No. And, in fact, the reason that the prosecution fought so hard to get that exculpatory testimony was as a vehicle for introducing all her incriminating statements to law enforcement. But I just want to go back for a minute. I agree with you that her credibility was certainly impaired. But I think that when you get to the domestic violence expert testimony, the domestic violence is telling the jury, even when she says that, she's actually been, that's evidence of her being a battered woman, because that's what battered women do. Well, that issue is not before us. It's not part of the habeas petition. And is it? No. The admissibility of that testimony. No. But what it goes to is the prejudice that flowed and the reason that he needed this 2003 evidence. If this had been at trial with full scope for cross-examination, in a sense, I guess I'm asking Judge Corman's question about, okay, you had a thousand questions. What questions would have been asked at trial of her to impeach her? I understand that there would have been questions about the 2003 episode where she pulled a knife on him. What other questions would there have been? Well, defense counsel referred repeatedly to other episodes, but they're not fleshed out in the record, so we don't know what they are. The inference is that there are other similar episodes where she was the aggressor that predated the series of episodes. Would there have been questions going to whether she was, whether she tended to tell lies? I think it's more to the fact that she was the aggressor, that she pulled a knife on him, that she, that. Would there have been questions about her prior drug use and imprisonment for drug use and her mental instability? I mean, any time you've got a live witness on the stand, you try to dirty up that witness. Would there have been questions on that and what might have been the effect of those questions had they been asked? Well, the other area is, I mean, one was the 2003 and similar episodes. The other was bias and motive. So I assume he would have tried to get into those types of issues as well.     And I think we can try to make sure that she's lying just to discredit her, to make sure that to try and convince the jury that she's not telling the --" not that she's lying now, but that she was lying when she reported that the police were trying to get him into trouble telling lies and so on. Yes, Your Honor. But do we have much at all in terms of what those questions would have sounded like? We don't have the record on that. I mean, he made an offer of proof that there were other episodes, that there were other areas of bias and motive that he wanted to inquire into, but we don't have specifics on that in the record, Your Honor. Okay. Well, but, you know, I mean, one of the problems I have is that by the time of trial you have an argument that this all should have been excluded as a matter of law because he didn't have discovery. But by the time of trial there was full discovery. He had everything that he would have needed had this woman showed up to testify. And there isn't any statement of what else there would have been to impeach this woman's credibility other than these two questions. Shouldn't, particularly if he wants habeas corpus relief, shouldn't he? He didn't make a record sufficient for us to grant it based on simply some wild statement that, you know, I've got other things that I want to inquire about. He could have made a record at the trial. Well, I think that the 2003 incident is sufficient in itself because even the Court of Appeal admitted that was relevant to self-defense, and it was excluded. He was prevented from presenting it to the jury. Well, the Court of Appeal also said that basically self-defense wasn't really an issue in the case to begin with, wasn't seriously explored, which is, as I read the record, true. I mean, it wasn't even argued. Well, I think that's because he didn't have the evidence he needed to present it. He asked for the self-defense jury instruction. He wanted to present it. That one question wouldn't have, I mean, the reality is that one question wouldn't have made a self-defense. They had, as part of the testimony of the police officers, they had pictures of her, and most of the time they took pictures of this woman with bruises on her face. I mean, most of her statements, these statements were corroborated. I mean, this, to me, whether the expert testimony should have come in or not is not before us, but this seems to me to be a kind of a classic battered spouse syndrome case. But the question is whether if she was an aggressor and she attacked him with a knife, whether he was proactive in his defense and it resulted from an altercation. Yes, but there wasn't, this wasn't, this was, there were any number of incidents where there's clear evidence that she was beaten. But there was also an incident where she reported and there were, the reporting officer said that he saw no evidence of injury. Okay. Why don't we hear from the State and then we'll give you a chance to respond. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. I'm Kevin Vienna. I'm a Deputy Attorney General for the State of California representing Respondent. My argument, in my argument, I intend to address only two issues, unless the Court has other questions. But I think the two critical issues are these. The first one is one that the Court has sort of recognized, and that is the jury did not find the victim credible. And consequently, no additional impeachment would have substantially affected their view of her credibility. Well, to some degree they found her credible. I mean, they didn't convict all the way down the line the way you wanted them to. And what I'd like to do in fleshing out that argument, Your Honor, is indicate that the crimes for which Mr. Castellano were convicted very largely were crimes for which there was a great deal of independent corroboration. That is, it didn't rely on her statements. There was other independent corroboration. I'll go over that briefly in a moment, if I may, Your Honor. And the second issue is that the reason there was no self-defense presented at trial is largely that there was no basis for a self-defense argument. That is, even if on occasion, and there was no dispute, I mean, there was no question that she was at least on occasion the initial aggressor, excuse me, and Mr. Castellano had observed antecedent threats. That was fully apparent from her letters and even from her testimony at the preliminary examination. There were two big hurdles to any sort of self-defense, to any of this. I mean, let me stop you for just a minute. You say it's apparent from her testimony at the preliminary hearing that she had been the aggressor. I read that. I'm not sure I agree with you. I think the overall impression was that, from her testimony, from the letters in particular defense examiners. No, no, I'm not talking about that. You said from her testimony at the preliminary hearing. Where in her testimony? I don't know. I'll have to look. I'm not sure that I have anything to point to there. But I think that's not inaccurate to say that overall it was clear that they fought. Let me stop you again. One of the reasons you may not be able to point to a particular testimony in the record is that it might not be there. Another reason you may not be able to do it is we ask people when they write briefs and they cite evidence in the record to give us in the brief an ER reference so that we can find what you're talking about. There is no such reference anywhere in your brief. I don't dispute that, Your Honor, and I won't try to correct the Court's observation of her testimony. I read her testimony this morning. But I also want to make sure that if you're writing briefs for us again, you're supposed to put, when you're referring to testimony or other things in the record, you're supposed to tell us where in the record we can find it. And I agree that's a fair criticism of our brief, Your Honor. Okay. Thank you. But the problems with self-defense were this. Even if there were antecedent threats that had been shown with regard to the June incident, which was two years preceding any of the charge incidents in this case, but there are two sort of important elements. The first is how the jury was instructed on self-defense. And there are essentially three elements of that. First of all, that there has to be an imminent threat or an actual battery, imminent threat or actual battery. The second is that the defendant must honestly and reasonably anticipate that imminent threat. Either of those might have been established in some of these circumstances and were sort of reasonable for Mr. Castellano. But the third is that the degree of force used in self-defense has to be reasonable. That is, it has to be proportional to the threat that was given. And that's not what happened in these cases. One other issue, and this is, I saw this only in defense counsel's argument, but, and that's in excerpts of record, page 804. He describes his client, Mr. Castellano, as 6 feet tall and 300 pounds. So in the mutual combat that occurred regularly, that is, in the combat between them, in domestic violence regularly, Mr. Castellano went beyond what was necessary at any point to have defended himself. That is, I think the best example of that is the incident on February 27th, where he, where Irene Sanchez said that he punched her 15 times. And Christina Castellano said that she observed him punching her multiple times as she looked through the window before she called the police. There's no question that there was no self-defense involved in that incident and no real possibility for self-defense. Back to my first point, and that is, the jury carefully weighed the evidence and did not rely on her testimony or did not really seem to credit it unless there was significant corroborating evidence supporting her claim of domestic violence. With regard to the April 30th, May 1 incident, there was, the corroborating evidence was a photograph of the mark on her neck when she had told the police that he had choked or grabbed her by the neck. And also that there was an admission by Mr. Castellano, that is when the police officers talked to him a couple of days afterwards, essentially asking him to come in. He admitted that he had grabbed and pushed her and should not have done that. My reference for that is Exhibits of Record 11, where the report and recommendation talks about what happened at trial. Found that, as a matter of fact, that those things had happened. The jury next found Mr. Castellano guilty of corporal injury on a spouse from February 27th in 2006. In addition to the statements of Irene Sanchez showing guilt of that crime, they found, or there was the testimony, as I just mentioned, or the prior statements of Christina Castellano, and there were multiple pictures showing significant bruising to her face from that incident. And the defendant also made an admission in that case. He said, I shouldn't have done that. That's at Exhibits of Record page 13. Now, significantly for that case, for that incident, the February 27th, 2006 incident, the jury found Mr. Castellano not guilty of aggravated assault. That is, they found him not guilty of striking his wife with a lamp. She was the only one who said that he had struck her with a lamp. Christina Castellano did not corroborate that, so far as I could see, in any statement that she ever made. And the jury found him not guilty of that more serious crime on that incident. For the, let's see. For the incident on, with regard to his assault of her on July 15th, 2006. She said that her statement was that he had sort of grabbed her by the head or hit her on the head when he approached her at the birthday party, and then he went into the bedroom and he assaulted her. There was corroboration in regard to that offense as well, in that his father was the one who called the police, made the 9-11 report, and reported what was going on there. And that thereafter, shortly afterwards, he fled in the car. And then finally, with regard to the July 30th, 2006 incident, he was convicted only of criminal threats. He was not convicted of the assault with the car. And with regard to the criminal threats, there was corroborating testimony or corroborating statements by two independent witnesses, Concepcion Villegas and Adrian, I believe it's pronounced Robanda, each of those who heard the threat and heard him tell her that if there was a report to the police, he would kill her. The jury found him not guilty of the assault with the car. They found him not guilty of the assault with the lamp. They found him not guilty in particular on the offense for June 15th, 2006, found him not guilty of an assault with a knife or use of a knife in assault on her, and found him guilty only of criminal threats. So the jury carefully, it is apparent from the record and the results, that the jury did not deem her to be a credible witness in any significant way in this prosecution. And when you add to that what the magistrate judge described, as he described it in his report in the report and recommendation that excerpts of Record 39, the exclusion of those or the sustaining of relevance objections to two questions, those questions were indeed marginally relevant. Okay. Let me say something, though. You may end up prevailing in this case. But we've got a serious problem if we are introducing at trial testimony at preliminary hearings because of the limited nature of what's going on. And it may be that because of the other evidence that's coming in for the reasons that you've given, you can sustain this conviction on habeas. You might want to consider, particularly as you're dealing with domestic violence cases where there may be a possibility that the evidence given by the – that the witness may not be willing to come forward at trial to allow – I mean, if you're going to bring in the preliminary hearing material, you may want to ask the judge to have a full-fledged trial at the preliminary hearing because, as a general proposition, I find it very troubling to introduce preliminary hearing testimony without the testifier present in court. Your Honor, I agree with you completely. I mean, you've got a real problem with this. We could in a different case. The requirement for prior testimony is that there be – is that the opportunity to cross the gamut be full and complete. Which is by definition not at the preliminary hearing. Or might not be. Well, by definition is not. Go ahead. I won't quibble with you. I won't argue with you about that. We know the purpose of the preliminary hearing. Do you bind them over for trial? Yes, the prosecutor's purpose is not to put on the full case, and the defense counsel may not disclose his full defense at the preliminary hearing. Yes, Your Honor, I agree. But that may be. But that argues for a per se rule. By the time of trial, there's been full discovery, and you will know whether or not there was a serious impediment to the examination that occurred at the preliminary hearing. And then you can make your – make the argument that I think Judge Fletcher correctly argues is troubling. Yes, Your Honor. And could be. I would add, though, simply from my own personal experience, that almost always discovery is to the extent the prosecutor hasn't completed the preliminary hearing. That is, continuances are regularly granted to the defense if they haven't received or have only recently received the discovery. That doesn't resolve all of the problems. And my recollection is – correct me – is that except for the letter that she wrote to the prosecutor, which was after the preliminary hearing, all of the impeachment evidence that the defendant had, and it was significant, it was able to introduce, was presumably available to him at the time of the preliminary hearing. I can say honestly that I don't know for sure, but certainly she had been cooperative with the defense and was indeed in Mr. Castellano's corner by the time of the preliminary hearing. So all of that stuff seems to me would have been available to defense counsel before the preliminary hearing. Thank you. Thank you, Your Honor. Ms. Young, would you like one minute? Thank you, Your Honor. I just want to point out that one of the things that the prosecutor was saying was that there was independent corroboration. And that's inaccurate. There's the June episode that he didn't deal with, which she reported four days after the fact, which he was convicted of. Also, the fact that he grabbed her and pushed her could have been in the course of self-defense in the course of a struggle. The other independent corroboration is just that the father called and he fled. So there was not independent corroboration. The testimony by Christina was flawed because Christina said that she was saying what Sanchez told her to say. And so I just want to reiterate that this 2003 episode could have changed the course of this trial because it would have shown she was the aggressor, he had reason to fear her, he had reason to be proactive, and she had reason to be the first reporter. If there's no further questions, then I'll submit. Okay.
judges: Korman, Goodwin, Fletcher